## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| WILLIAM SCOTT CAMERON, | ) | **NON-PARTY MICHAEL BASS'** |
| | ) | **MOTION TO QUASH SUBPOENA** |
| Plaintiff, | ) | **WITH INCORPORATED** |
| | ) | **MEMORANDUM OF LAW** |
| vs. | ) | **Fed. R. Civ. P. 45(d), 26(b)** |
| | ) | |
| THE UNIVERSITY OF NORTH CAROLINA | ) | |
| AT CHARLOTTE, et al. | ) | |
| | ) | Underlying Action No.: |
| Defendants. | ) | 3:19-cv-221-MOC-DCK (W.D.N.C.) |

NOW COMES non-party Michael Bass, by and through counsel, and respectfully moves this Court to quash the subpoena issued to AT&T Wireless Custodian of Records in the above captioned action, pursuant to Fed. R. Civ. P. 45(d) and 26(b).  The subpoena must be quashed because it requires the disclosure of privileged or otherwise protected matters and seeks information beyond the scope of discovery.

Granting the relief requested herein would prevent the non-party AT&T Wireless Custodian of Records from disclosing the personal, confidential, protected phone records of another non-party, Michael Bass—which phone records are irrelevant in the underlying action.

### INTRODUCTION

This lawsuit is between Plaintiff William Scott Cameron and University of North Carolina at Charlotte ("UNCC") and eight of its officers and employees.  Plaintiff brought this lawsuit because he was suspended from his college tennis team for allegedly bullying a teammate, Michael Bass.  Mr. Bass, the alleged victim of Plaintiff's bullying, is not a party to this action and would prefer not to be involved.  Publicity regarding this lawsuit has subjected him to personal embarrassment.  Notwithstanding his frustration, Mr. Bass has cooperated in the discovery process.  To date, he has (1) provided a sworn declaration, (2) complied with a

subpoena duces tecum by producing his cell phone text messages related to the case, and (3) voluntarily agreed to schedule a deposition.

Apparently, that is not enough for the Plaintiff. Plaintiff has now subpoenaed AT&T to obtain the production of Michael's personal cell phone records and text messages for the past three years. Notably, this subpoena is not narrowly tailored to be limited to specific communications with parties to the lawsuit. Its breadth is unlimited and would sweep up Mr. Bass' text messages with friends, family, girlfriends, and other individuals unrelated to the lawsuit. This gross over-reach is an obvious attempt to harass Mr. Bass and obtain communications, unrelated to the case, involving Mr. Bass and many other individuals who are not involved in the case. Though one would hope that this type of over-reach would not occur in a case about bullying, it has. This Court should end it.

## BACKGROUND

The current iteration of this lawsuit was initiated in North Carolina state court on March 22, 2019. [DE 1.] Plaintiff's counsel sent Mr. Bass—a non-party—a letter, also dated March 22, 2019. Ex. 1. The letter requested that Michael execute a pre-made declaration which was enclosed. *Id.* The letter also stated, "If you are unwilling to execute a declaration, however, I will be forced to issue a subpoena to compel your attendance of a deposition." *Id.* at 1.

Michael did not execute that declaration because it contained inaccuracies. He did, however, obtain counsel. The case was removed to the Western District of North Carolina, and Michael later provided a sworn and executed declaration that set down his experiences with the parties to the litigation.

Plaintiff issued Michael a subpoena on June 22, 2020. Ex. 2. That subpoena commanded the production of: "All communications" between (1) Michael and Plaintiff; (2) Michael and

defendant Jeremy Feldman; (3) Michael and "any representative or employee" of UNCC "related to allegations of bullying,"; (4) Michael and "any third party . . . related to or describing the allegations of bullying,"; (5) Michael and "any representative or employee" of UNCC relating to his own suspension from the UNCC tennis team, as well as (6) "All documents or electronically stored information memorializing, regarding, or reflecting the allegations of bullying." *Id.* at 4-5. It sought all these communications and documents for over a three-year period. *Id.*

This subpoena required compliance by July 20, 2020. *Id.* at 1. Michael timely responded to the subpoena. Ex. 3. He provided a twenty-nine page production which included his declaration and substantive communications in the form of text messages and screenshots of conversations related to the allegations in this case.[1]

Though Michael is attending school and working at an internship, he agreed to make himself available for a November 14 deposition by Zoom videoconference. Ex. 4. at 4, 5. Plaintiff's counsel responded that Michael's "deposition needs to be in person," and must be "prior to November 14." *Id.* at 3, 4. No valid rationale was given for these demands, *see id.*[2], despite Magistrate Judge Keesler's Order of June 4, 2020 requiring completion of discovery by November 25, 2020, and "direct[ing]" Plaintiff's lead counsel to "accomplish as much discovery as possible remotely." [DE 66 at 2.]

A teleconference regarding discovery disputes between the parties occurred before Magistrate Judge Keesler on September 28, 2020, and an order issued—again—directing the discovery to be complete by November 25, 2020, and requiring depositions to be conducted

---

[1] Available for *in camera* review upon request.

[2] *See also id.* at 2 (noting surprise "that, in a case where one of the primary issues is whether your client bullied my client, you would reject my client's offer of cooperation on his deposition and instead seek to unilaterally force a deposition schedule and deposition conditions upon him that are not workable for our side.").

3

remotely.  [DE 84.]  In compliance with this newest order, Plaintiff's counsel agreed to depose Michael remotely on November 14, 2020.  Ex. 4 at 1.

On the same day Magistrate Judge Keesler issued that order, Plaintiff served a notice of intent to serve a subpoena.  Ex. 5.  The attached subpoena commands Michael's cell phone service provider to produce:

> 1. A record of all incoming and outgoing calls and the duration of each call for the phone number (336)509-3928 for the period of July 1, 2017 to September 1, 2020.
> 2. A record of all incoming and outgoing text messages for the phone number (336)509-3928 for the period of July 1, 2017 to September 1, 2020.[3]

Ex. 6 at 4.  This subpoena (the "AT&T Subpoena") is directed to the AT&T Wireless Custodian of Records in North Palm Beach, Florida, and requires production by "October 19, 2010 [sic]." *Id.* at 1.

Michael has simultaneously moved to quash the subpoena in the district of the subpoena's compliance, to transfer the motion to quash to the issuing court, and for a protective order in the issuing court.

## LEGAL STANDARD

The Court for the district where compliance with a subpoena is required "must quash or modify" subpoenas which "require[] disclosure of  privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  Moreover, although Rule 45 does not identify irrelevance or overbreadth as reasons to quash a subpoena, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26."  *Am. Fed'n of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011) (compiling cases); *accord Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322,

---

[3] Plaintiff's counsel subsequently has asserted in meet and confer conversations that they seek only a log of phone calls and text messages, and not the content of text messages; however, the subpoena does not make that clear and reads far more broadly.

4

1329 n.4 (11th Cir. 2020). "Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Jordan*, 947 F.3d at 1329.

## ARGUMENT

I.  <u>Michael's Privacy Interest in His Cell Phone Records Afford Standing to Challenge this Subpoena</u>

The general rule is that "an individual does not have standing to challenge a subpoena served on another, except when that individual has a personal right or privilege with respect to the matter of the subpoena." *Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016) (citing *Barrington v. Mortgage IT, Inc.*, 2007 WL 4370647 (S.D. Fla. 2007)); *see also Lauderhill Mall Inv., LLC v. Arch Specialty Ins. Co.*, No. 14-CV-21003-BB/AOV, 2014 WL 11906637, at *2 (S.D. Fla. July 29, 2014). Some courts within the Eleventh Circuit apply a "somewhat broader" rule, finding that "standing exists if the party alleges" such a right or privilege. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (quoting *Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir. 1979); *accord, e.g.*, *Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959, at *5 (M.D. Fla. Apr. 8, 2019). This rule applies to parties and non-parties alike. *Equal Employment Opportunity Comm'n v. Sirdah Enterprises, Inc.*, No. 113CV03657RWSRGV, 2015 WL 12630686, at *4 n.8 (N.D. Ga. Feb. 25, 2015) (citing *Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, Civil No. 08-5582(JHR/JS), 2009 WL 2982632, at *4–5 (D. N.J. Sept. 10, 2009)); *see also Terwillegar v. Offshore Energy Servs., Inc.*, No. CIV.A. 07-01376, 2008 WL 2277879, at *3 (E.D. La. May 29, 2008) (granting motion to quash filed by non-party).

Here, Michael has standing to challenge the AT&T Subpoena under either standard because he has a personal right or privilege in the cell phone records which are the target of the AT&T Subpoena. This personal interest in cell phone records held in the custody of a cellular

telephone company has been recognized for more than twenty years.  *See Syposs v. United States*, 181 F.R.D. 224, 229 (W.D.N.Y. 1998) ("Defendant and Dr. Meyers have standing to assert Dr. Meyers's legitimate confidentiality interests in the subpoenaed records . . .").  And the fact that these records are unprivileged is of no consequence because the Rule, by its text, applies to privileged disclosures as well as "other protected matter."  Fed. R. Civ. P. 45(d)(3)(A)(iii). The protection afforded by the Rule "extends beyond the strict bounds" of privilege to other protected matters.  *Jordan*, 947 F.3d at 1336.

Federal courts around the country have held that, in the context of subpoena challenges, individuals have a personal interest in their own cell phone records which is sufficient to give them standing to challenge a subpoena seeking those records.  *See Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2014 WL 12616864, at *1 (M.D. Fla. June 16, 2014) ("I conclude that Defendant demonstrates a sufficient personal interest in the records related to its outgoing calls to permit its challenge to the subpoenas."); *see also, e.g.*, *Winter v. Bisso Marine Co.*, No. CIV.A. 13-5191, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014) (finding plaintiff "has standing to object to defendant's subpoena to Verizon because he has a personal interest in the records of his own cell phone usage."); *Ademiluyi v. Phillips*, No. 2:14-CV-00507-MMD, 2014 WL 7012493, at *2 (D. Nev. Dec. 12, 2014) (finding that a non-party "does have a personal interest in securing the privacy of his cell phone records" and accordingly finding he had standing to challenge subpoenas issued to non-party T-Mobile).  Indeed, at least one court has found that a plaintiff had standing to challenge a subpoena stemming from her personal interest in both her cell phone records and those of her husband. *Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, at *2 (N.D. Okla. Aug. 6, 2015) ("Because Clark has a personal interest

in the privacy of her and her husband's cell phone records, she has standing to challenge the subpoenas issued by Valley Forge.").

Like in each of the cases above, Michael is seeking to challenge a subpoena issued to a non-party that will cause disclosure of his personal cell phone records. As such, the privacy interests and confidentiality concerns implicated in this case are of precisely the same type which courts have considered in the past. This Court should join those cited above in finding an individual's privacy interest and concerns of confidentiality confer standing to challenge a subpoena aimed at procuring those personal records.

II.     The Subpoena Seeks Protected Matter and Is Due to Be Quashed

For the same reasons that Michael has standing to bring this motion, the AT&T Subpoena should be quashed. Rule 45 of the Federal Rules of Civil Procedure requires that a Court quash or modify a subpoena requiring the disclosure of "other protected matters." The AT&T Subpoena commands production of "[a] record of all incoming and outgoing calls and the duration of each call," as well as "[a] record of all incoming and outgoing text messages," for Michael's personal cell phone number for the period of July 1, 2017, to September 1, 2020.[4] Ex. 6 at 4. As discussed above, in seeking these vast and personal cell phone records, the AT&T Subpoena seeks protected matters and is subject to being quashed.

_____

[4] To whatever extent these facially overbroad requests seek the substantive contents of Michael's communications, the Stored Communications Act ("SCA"), 18 U.S.C. 2701-2712 prohibits AT&T from disclosing those contents. Specifically, the SCA provides that subject to certain enumerated exceptions, an "entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Importantly, "[t]he SCA does not contain an exception for civil discovery subpoenas." *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 991 (C.D. Cal. 2012). As a result, courts have rejected the argument that the SCA permits the disclosure of the contents of communications pursuant to a civil discovery subpoena. *See, e.g., Crispin v. Christian Audigier, Inc.,* 717 F.Supp.2d 965, 976 (C.D. Cal. 2010).

7

Quashing this subpoena is proper even though the Rule authorizes modification. In determining whether subpoenas are due to be quashed, courts balance the need for discovery against the implicated privacy and confidentiality interests. *Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). Other factors relevant to this determination "are the relevance of the requests, the breadth of the request, the time period covered by the requests, and the particularity with which the documents are described. *Id.* Finally, "[t]he status of a person as a non-party is a factor that weighs against disclosure." *Id.*

The AT&T Subpoena is due to be quashed because no factor in this analysis weighs in favor of modification.

The court must first assess the need for discovery, to then weigh it against the implicated privacy interests. In this case, there is no need for this discovery. The records sought simply do not have any tendency to make any fact of consequence in this action more or less probable. The records sought will identify the fact of Michael's communications, their duration and the time at which they occurred. But the mere fact of communications between this non-party and anyone else does not bear on Plaintiff's claims against the various defendants or the defenses thereto. Indeed. Further, to the extent that the content of any relevant text messages between Michael and any party is discoverable, the parties already have direct access to that information frin their own records and Michael already has produced what he has in his possession. Thus, there is no need for Michael's cell phone records.

In contrast, the privacy and confidentiality interests at stake here loom large. The reason that courts recognize this confidentiality interest is clear: phone records—even the facts of communications therein—may disclose the intimate details of one's life, such as frequent phone calls to a psychiatrist or oncologist, calls to a mosque, synagogue or church, an medical

treatment center, or to a criminal defense attorney.  As previously noted, federal district courts around the country have therefore afforded due weight to personal phone records for over twenty years.

Accordingly, here, the privacy interests greatly outweigh the need for this discovery.  The remaining factors pertinent to this analysis also support this conclusion.

The relevance of the requests weigh against allowing them to survive, even in modified form, because the information sought is not relevant to the action.  "[T]he scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan*, 947 F.3d at 1329.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," in light of certain considerations.  Fed. R. Civ. P. 26(b)(1).  The party seeking the discovery must demonstrate relevance.  *Fadalla*, 258 F.R.D. at 504 (citing *American Electric Power Co., Inc. v. United States,* 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

Here, Plaintiff will not meet that burden because the fact of, the time of, and duration of non-party Michael's communications since 2017 do not make any claim or defense in this action more likely.  Nor is the AT&T Subpoena proportional to the needs of the case in light of considerations such as "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(1).  No issue will be resolved by the AT&T Subpoena, and while substantive communications may in fact be relevant, Michael has produced what he has.  And any others which he does not have may be obtained from parties to the action.

Moreover, the request is facially overbroad.  It encompasses records of all incoming and outgoing calls, their duration, and of all incoming and outgoing text messages, and is devoid of any effort to tailor it to the claims and defenses at issue.  Relatedly, the AT&T Subpoena does

not describe documents with any particularity, and instead merely requests "record[s]." Ex. 6 at 4. Finally, and importantly, Michael's non-party status "weighs against disclosure." *Fadalla*, 258 F.R.D. at 504. Thus, each factor relevant to the inquiry of whether a subpoena is due to be quashed weighs in favor of quashing it.

*    *    *

The AT&T Subpoena targets the confidential information of a non-party. Many federal courts have recognized that the privacy interests at stake here constitute "protected matters" under Fed. R. Civ. P. 45(d)(3)(A), and have therefore quashed similar subpoenas. And where—as here—the privacy interests are weighty, the need for discovery is absent, and each other factor courts consider weighs against production, a subpoena should be quashed. Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii) and 26(b)(1), the AT&T Subpoena is due to be quashed.

**CONCLUSION**

For the reasons stated above, non-party Michael Bass respectfully requests that this Court quash the subpoena issued to AT&T Custodian of Records.

**CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

/s/ *Spencer H. Silverglate*
Spencer H. Silverglate

**CERTIFICATE OF GOOD FAITH CONFERENCE; UNABLE TO CONFER**

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the movant has made reasonable efforts to confer with all non-parties who may be affected by the relief sought in the motion but has been unable to do so.  The reasonable efforts made were specifically as follows: a phone call to the AT&T Custodian of Records in North Palm Beach, Florida, at approximately 9:30 am on Wednesday, October 7, 2020, and a subsequent email to GLDC@att.com, sent at 11:53 am on the same day, which has not received a response.

/s/ *Spencer H. Silverglate*
Spencer H. Silverglate

Respectfully submitted, this 14th day of October, 2020.

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900
Miami, FL 33131
T: (305) 377-0700
F: (305) 377-3001

By: /s/ *Spencer H. Silverglate*
Spencer H. Silverglate
Florida Bar No. 769223
ssilverglate@cspalaw.com
mpedraza@cspalaw.com

*Attorney for Non-Party, Michael Bass*

11

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct of the foregoing was electronically filed on October 14, 2020 with the Clerk of Court using the CM/ECF system, and that the foregoing was served upon the party as listed below by email.

Derek M. Bast
Wagner Hicks, PLLC
831 E. Morehead Street, Suite 860
Charlotte, NC  28202
derek.bast@wagnerhicks.law

Sean C. Wagner
Wagner Hicks, PLLC
831 E. Morehead Street, Suite 860
Charlotte, NC  28202
sean.wagner@wagnerhicks.law

Tyler B. Peacock
Gardner Skelton PLLC
505 East Boulevard
Charlotte, NC 28203
tyler@gardnerskelton.com

AT&T Wireless
Custodian of Records
11760 U.S. Highway 1
Suite 600
North Palm Beach, FL 33408
GLDC@att.com

Nora Foster Sullivan
NC Department of Justice
P.O. Box 629
Raleigh, NC 27602
nsullivan@ncdoj.gov

Zachary A. Padget
Asst. Deputy Attorney General
NC Department of Justice
P.O. Box 629
Raleigh, NC 27602
zpadget@ncdoj.gov

James P. McLoughlin, Jr.
Moore & Van Allen
100 North Tryon St., Suite 4700
Charlotte, NC 28202
jimmcloughlin@mvalaw.com

VIA U.S. MAIL
AT&T Corp.
C/O CT Corporation System, Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

This the 14th day of October, 2020.

/s/ *Spencer H. Silverglate*
Spencer H. Silverglate